1  Alan Nakazawa, State Bar No. 84670
   alan.nakazawa@cnc-law.com
2  Dena S. Aghabeg, State Bar No. 185311
   daghabeg@cnc-law.com
3  COGSWELL NAKAZAWA & CHANG, LLP
   444 West Ocean Boulevard, Suite 1410
4  Long Beach, California  90802-8131
   Telephone (562) 951-8668
5  Facsimile: (562) 951-3933

6
7  Attorneys for Plaintiff
   NIPPON YUSEN KAISHA

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11
   NIPPON YUSEN KAISHA, also        ) CASE NO.: 14CV-08055 R (JEMx)
12 known as NYK LINE;  NYK LINE     )
   (NORTH AMERICA) INC. as agent    )
13 for NIPPON YUSEN KAISHA,         ) IN ADMIRALTY
                                    )
14           Plaintiffs,            )
                                    ) STATEMENT OF
15                                  ) UNCONTROVERTED FINDINGS OF
       vs.                          ) FACTS AND CONCLUSIONS OF
16                                  ) LAW FOR NIPPON YUSEN
                                    ) KAISHA'S MOTION FOR
17 PANDOL ASSOCIATES               ) SUMMARY JUDGMENT
   MARKETING, INC.,                 )
18                                  ) Date of Hearing:   April 6, 2015
           Defendant.               )
19                                  ) Time:           10:00 a.m.
   _____  )
20                                  Courtroom:  Honorable Manuel L. Real
                                               Courtroom 8, 2nd Floor
21                                             312 North Spring Street
                                               Los Angeles, CA 90012
22
23        As requested by the Court at the April 6, 2015, hearing, Plaintiff

24 NIPPON YUSEN KAISHA ("NYK") hereby submits its Statement of

25 Uncontroverted Findings of Facts and Conclusions of Law, in support of its

26 motion for summary judgment against Defendant PANDOL ASSOCIATES

27 MARKETING, INC. ("Pandol").

28 _____
     STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
     LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY
                           JUDGMENT

**UNCONTROVERTED FINDINGS OF FACTS WITH SUPPORTING EVIDENCE IN BRACKETS**:

1.     Plaintiff NYK is a vessel operating common carrier organized under the laws of Japan.

[Decl. of Bertot ¶6]

2.     Plaintiff NYK LINE (NORTH AMERICA) INC. ("NYK Line NA") is a corporation organized under the laws of Delaware, and is the agent of NYK in the United States.

[Decl. of Bertot ¶7]

3.     Pandol is a corporation organized and existing under the laws of California, with an office in Selma, California.

[Answer to Complaint ¶5]

4.     Pandol is, and at all material times was, engaged in the fruit export business, and is, and at all material times was, doing business within this judicial district.

[Answer to Complaint ¶5]

5.     In November and December 2011, freight forwarder, L.E. Coppersmith, Inc., on behalf of Pandol, as the shipper, booked grape shipments for carriage with NYK from Oakland and Los Angeles to Manila.

[Decl. of Bertot ¶8]

6.     The Booking Acknowledgments prepared by NYK confirm the

1    bookings of the cargo.  As the Booking Acknowledgments indicate, Pandol

2    requested and was designated as the "shipper" at the time of booking.

3        [Decl. of Bertot ¶9 and Ex. "A" thereto]

4

5        7.    The cargo booked for Pandol with NYK was carried by NYK

6    subject to the terms of the bills of lading issued by NYK to Pandol and NYK's

7    tariff (the "Bills of Lading").

8        [Decl. of Bertot ¶¶ 10, 11, 12]

9

10       8.    NYK received the cargo at Oakland and Los Angeles, and carried the

11   cargo on ocean-going vessels from California to Manila pursuant to the terms of

12   the Bills of Lading issued by NYK, and applicable tariff, and in consideration of

13   freight and other charges.

14       [Decl. of Bertot ¶10]

15

16       9.    The Bills of Lading clearly set forth the freight and other charges due

17   for the carriage.  The Bills of Lading also indicated whether the freight and other

18   charges set forth in the Bills of Lading were to be "prepaid" (i.e. collected from

19   the shipper in the United States) and which charges were to be collected from the

20   consignee at the destination.

21       [Decl. of Bertot §11; *See* face of Bills of Lading attached as Ex. "B" to the

22       Decl. of Bertot]

23

24       10.   As requested at the time of booking, Pandol was designated as the

25   "shipper/exporter" on the face of the Bills of Lading.

26       [Decl. of Bertot ¶¶9, 11; *See also* face of Bills of Lading attached as Ex. "B"

27

28   _____
     STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
     LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY
     JUDGMENT

to Decl. of Bertot]

11.     The Bills of Lading contained the following relevant clauses:

**Article 1. (Definition).** The following words herein have the meaning hereby assigned:

(h) "Merchant" includes the Shipper, consignor, consignee, owner and receiver of the Goods, and the holder of this Bill and any other person acting on their behalf;

. . . . .

**4.  (Carrier's Tariff).**  The terms of the Carrier's applicable Tariff are deemed to be incorporated herein.  Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request.  In the case of inconsistency between this Bill and the applicable Tariff, this Bill shall prevail.

. . . . .

**23. (Freight and Charges)**

. . . . .

(2) Full freight to the port of discharge or place of delivery named herein shall be considered completely earned on receipt of the Goods by the Carrier, whether the freight be stated or intended to be prepaid or collected at destination.  The Carrier shall be entitled to all freight and other charges due hereunder, whether actually paid or not, and to receive and retain them irrevocably under any circumstances whatsoever, whether the Vessel and/or Goods be lost or not, or the Carriage be broken up or frustrated or abandoned at any stage of the

entire transit.  Full freight shall be paid on damaged or unsound Goods.

(3) The payment of freight and/or other charges shall be made in full and in cash without any offset, counterclaim or deduction. . . .

. . . . .

(5) The Merchant shall be liable for, and indemnify the Carrier against all duties, taxes and charges including consular fees levied on the Goods howsoever caused, including the Merchant's failure to comply with laws and regulations of the government or public authorities in connection with the Goods or to procure consular, Board of Health or other certificate to accompany the Goods. . .

(6) The parties defined herein as the Merchant shall be jointly and severally liable to the Carrier for the payment of all freight and other charges and for the performance of the obligation of each of them hereunder.

**29.  (Indemnity)**

The Merchant shall indemnify, defend and hold the Carrier harmless from all consequences of any (i) failure by the Merchant to comply with any provision of this Bill, Carrier's applicable Tariff, and/or any applicable circulars or contracts, laws or regulations, and/or (ii) breach of any of the Merchants representations or warranties or undertakings.  The Merchant's obligation to so indemnify, defend and hold harmless shall include reimbursement

of all expenses or amounts spend or incurred, including attorneys'
fees, penalties or liabilities imposed, or loss of profit, directly or
indirectly arising from or in connection with such failure or breach
and shall not be defeated or reduced by any negligence on the part of
or attributable to the Carrier.

[*See* Decl. of Bertot §12; Ex. "C" to Decl. of Bertot]

12.     Under the express terms of the Bills of Lading, Pandol, as the shipper
of the cargo and "Merchant," agreed to be responsible for the payment of the
freight and other charges relating to the carriage of the cargo.

[Decl. of Bertot §14; *See* Article 23(6) of the terms of the Bills of Lading
attached as Ex. "C" to Decl. of Bertot]

13.     NYK fully performed all of its obligations under the terms of the Bills
of Lading by carrying all of the cargo to Manila and delivering it there to the
consignee.

[Decl. of Bertot §21]

14.     NYK Line NA invoiced Pandol for the freight and other charges
due for the transportation of the cargo (the "Invoices").  The Invoices set forth the
charges that were due.

[Decl. of Bertot §15; *See also* Ex. "D" to Decl. of Bertot]

15.     Pandol failed to pay the outstanding freight and other charges due for
transportation of the cargo.

[Decl. of Bertot ¶¶18, 19]

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY
JUDGMENT

16.     There are ocean freight and other charges in the amount of $68,895, due and owing from Pandol to NYK.

[Decl. of Bertot §19]

17.     The ocean tariff filed by NYK with the Federal Maritime Commission includes the bunker adjustment charge, carrier security fees, document origin fees, document destination fees, VAS value added fees and destination delivery charges (THD T.H.C. (D)) that are charged by NYK to its customers under its tariff.

[Decl. of Bertot ¶17; *See also* Ex. "E" to Decl. of Bertot]

18.     The ocean freight rate of $3,000 for reefer shipments from California to Manila per 40 foot reefer container is set forth in Service Contract No. SC1301640 between the parties.  The Service Contract was on file with the Federal Maritime Commission.

[Decl. of Bertot ¶16]

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction of this action pursuant to 28 U.S.C. §1333 and Rule 9(h), Federal Rules of Civil Procedure, this being an admiralty action for ocean freight under ocean bills of lading and an ocean carrier's tariff.  The carriage or shipment of goods by sea is a traditional maritime activity which comes within the admiralty jurisdiction of the Court.  *Genetics Intern. v. Cormorant Bulk Carriers, Inc.,* 877 F.2d 806, 808 (9th Cir. 1989).  Under admiralty jurisdiction, the substantial rules of maritime law apply.  Id.

2.     Summary judgment is granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  As the party with the burden of persuasion at trial, the plaintiff must establish beyond controversy every essential element of its claim.  *Southern California Gas Company v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003).  Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  *Celotex Corp., supra*, 477 U.S. at 322-324.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must identify specific facts that show a genuine issue for trial.  *Id.* at 587; *See also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.2d 912, 919 (9th Cir. 2001).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Federal Rule of Civil Procedure 56(c).  *See Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1047 (9th Cir.1995).

3.    NYK moves for summary judgment against Pandol on its first cause of action for breach of contract and second cause of action for money due under marine tariffs.

4.    NYK argues that Pandol's failure to pay freight and other charges constitutes a breach of the bills of lading, and that based on the tariffs filed with the Federal Maritime Commission it is entitled to judgment as a matter of law in

1  the amount of $68,895, plus prejudgment interest, attorneys' fees and costs and

2  collection expenses.

3      5.    Under California law, there are four elements to prove breach of

4  contract.  One, the existence of a contract; two, plaintiff's performance or excuse

5  for non-performance; three, defendant's breach; and four, resulting damage to

6  plaintiff.

7      6.    The Bills of Lading were the contracts of carriage.  *See Norfolk*

8  *Southern Railway v. Kirby,* 543 U.S. 14, at 18-19, 125 S. Ct. 385, 160 L.Ed.2d 283

9  (2004); *Sea-Land Service, Inc. v. Murrey & Son's Co. Inc.* 824 F.2d 740, 745 (9th

10  Cir. 1987).  Contracts for the carriage of goods by sea "must be construed like any

11  other contracts: by their terms and consistent with the intent of the parties." *NACA*

12  *Logistics (USA) Inc. v. COSCO Container Lines Co., Ltd.*, 2005 U.S. Dist. LEXIS

13  33601 (W.D.Wash.2005) *citing Norfolk Southern Railway Co. v. Kirby*, 543 U.S.

14  14, 30-31.  If the terms of the parties' agreement with respect to the obligation to

15  pay freight and ancillary charges set forth in the relevant bills of lading are clear

16  and unambiguous, they are enforceable.  *Mediterranean Shipping Co. (USA), Inc.*

17  *v. Scanfreight Lines, Inc.*, 2000 U.S. Dist. LEXIS 16016, *6 and*9 (S.D.N.Y.

18  2000), citing *Mellon Bank. N.A. v. United Bank Corp. of New York*, 31 F.3d 113,

19  115 (2d Cir. 1994) ("A contract, the terms and conditions of which are clear and

20  unambiguous, is to be enforced by a court.").

21      7.    Pandol was designated as the "shipper" on the face of the Bills of

22  Lading.  Fact. No. 12.  Under Article 1 of the Bills of Lading, the "Merchant" is

23  defined to include the "shipper, consignor, consignee, owner and receiver of the

24  Goods, and the holder of this Bill and any other person acting on their behalf."

25  Fact No. 13.  Under the clear and unambiguous terms of the Bills of Lading, there

26  can be no dispute that Pandol, by virtue of its status as the "shipper" under said

27

28

Bills of Lading, is responsible for the payment of all freight and other charges relating to the carriage of their cargo.  Fact No. 14; Article 23(6) of the terms of the Bills of Lading attached as Exhibit "C" to the Declaration of Ron Bertot. Pandol is the responsible party under the express terms of the contracts of carriage. Even in the absence of a contractual obligation to pay freight, under maritime law it is well settled that the shipper is primarily liable to the carrier for freight charges.  *States Marine Intern., Inc. v. Seattle-First Nat. Bank,* 524 F.2d 245, 247 (9th Cir. 1975).

8.     It is undisputed that NYK performed its obligations under the Bills of Lading by carrying Pandol's cargo to the requested destination and delivering the cargo there to the consignee.  Fact No. 15.

9.     As confirmed by the Bills of Lading and Invoices issued by NYK to Pandol and the Declaration of Ron Bertot, Pandol breached the Bills of Lading by failing to pay NYK freight and other charges in the amount of $68,895.  Fact Nos. 17, 18.

10.     Pandol's breach of the Bills of Lading have caused NYK to incur damages in the amount of $68,895.

11.     Pandol contends in the First Affirmative Defense of its Answer that it is excused from violations of law, if any, due to NYK's failure to transport perishable grapes according to the shipping instructions and with due care.  Pandol further contends in the Second Affirmative Defense of its Answer that NYK's damages are reduced by the need to setoff and offset the damages caused by NYK to its cargo.

12.     The Bills of Lading could not be more clear regarding Pandol's obligation to pay freight.  Under Clause 23(2) of the Bills of Lading, "[f]ull freight to the port of discharge or place of delivery. . .is completely earned on receipt of

the Goods by the Carrier. . ."  Further, "*[f]ull freight shall be paid on damaged or unsound Goods.*" [Emphasis added].   Moreover, under Clause 23(2), "[t]he payment of freight and/or other charges shall be made in full and in cash *without offset, counterclaim or deduction. . ."* [Emphasis added].

13.    Moreover, the Ninth Circuit has established that in the absence of a contractual term to the contrary, freight is due and payable upon delivery of the cargo regardless of any claims the consignee or buyer might have for shortage or cargo damage on the shipment.  *Genetics Intern. v. Cormorant Bulk Carriers, Inc.,* 877 F.2d 806, 808 (9th Cir. 1989)*; Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280 (2d Cir. 1986); *Guangzhou Ocean Shipping Co. v. G.T. Intern. Inc.,* 1997 AMC 241, 244, 1996 WL 870735 (C.D. Cal. 1996).

14.    Thus, as a matter of contract, NYK is entitled to summary judgment for the unpaid freight notwithstanding Pandol's allegations of damage to cargo and there is no right to setoff or offset for alleged damage to the cargo.  *See Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280, 281-82 (2d Cir. 1986) (undertaking in charter party that freight is payable "without discount" is an independent obligation and the claim for freight is not extinguished because of failure of carrier to deliver cargo in undamaged condition); *King Ocean Central America, S.A. v. Angel Food and Fruit Co.,* 1996 AMC 146, 1995 WL 819141 (S.D. Fla. 1995) (under bill of lading clause that freight is payable without deduction on receipt of the goods, carrier is entitled to summary judgment for freight charges and there can be no setoff or withholding of freight for damage to goods.). 1996 AMC at 149.

15.    NYK has provided competent evidence that a contract existed between NYK and Pandol, that NYK performed by delivering the shipment to the requested destination, that Pandol breached the contract by failing to pay the

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY JUDGMENT

freight and other charges, and that NYK was harmed as a result of Pandol's failure to pay.  NYK has proven the elements of its claim and is entitled to summary judgment on its breach of contract.

16.     Because NYK has met its burden of establishing beyond controversy every essential element of its claim such that no reasonable trier of fact could find other than for the moving party and because Pandol has failed to oppose this motion and establish a dispute of material fact for trial, NYK is entitled to judgment as a matter of law for its first cause of action for breach of contract.

17.     Further, pursuant to the freight charges set forth in the ocean tariff filed with the Federal Maritime Commission, Pandol is obligated by law to pay NYK the freight and other charges incurred for the transportation of the cargo that are set forth in NYK's ocean tariff.  NYK is entitled to collect the outstanding freight and other charges under its ocean tariff.

18.     The rates for the charges are also set forth in NYK's ocean tariff and Service Contract between the parties filed with the Federal Maritime Commission. Decl. of Bertot §17 and Ex. "E."  The applicable tariff has the effective force of law.  *Costa Line Cargo Services, Inc. v.  McGraw-Edison Co.,* 623 F.Supp. 51 (S.D.N.Y. 1985), *citing State of Israel v. Metropolitan Dade Country, Florida*, 431 F.2d 925, 928 (5th Cir. 1970) and *Lowden v. Simonds-Shields-Lonsdale Grain Co.,* 306 U.S. 516, 520 (1939).  "The tariff rate is the 'only lawful rate' that can be charged, and the shipper's knowledge of that rate is conclusively presumed." *Sea-Land Service, Inc. v. Murrey & Son's Co., Inc.,* 824 F.2d 740, 742 (9th Cir. 1987) (citing *Louisville & N. R.R.,* 237 U.S. at 98). The obligation of the shipper to pay earned freight and the obligation of the carrier to collect freight are mandated by statute.  *See* 46 U.S.C. §1709(b)(1).  Under Ninth Circuit law, an ocean carrier has a private cause of action to collect freight charges required by a tariff.  *Sea-Land*

1  *Service, Inc. v. Murrey & Son's Co., Inc.*, 824 F.2d 740, 744 (9th Cir. 1987).

2  Accordingly, NYK is entitled to judgment as a matter of law on its second cause of

3  action.

4        19.    NYK is also entitled to recover prejudgment interest on the principal

5  amount of its claim.  In admiralty actions, the Court has discretion to award

6  prejudgment interest, but prejudgment interest should be granted absent

7  exceptional circumstances.  See *Alkmeon Naviera, S.A. v. M/V MARINA L*, 633

8  F.2d 789, 797 (9th Cir. 1980); *GF Co. v. Pan Ocean Shipping Co., Ltd.*, 795

9  F.Supp. 1001, 1008 (C.D. Cal. 1992).  Although the trial court has discretion, "this

10  discretion must be 'exercised with the view to the right to interest . . .'" *Alkmeon*

11  *Naviera, S.A. v. M/V MARINA L*, 633 F.2d 789, 797 (9th Cir. 1980).  The rationale

12  for awarding prejudgment interest is that the interest is an element of

13  compensatory damages.  *See Western Pacific Fisheries v. SS PRESIDENT*

14  *GRANT*, 730 F.2d 1280, 1288 (9th Cir. 1984); *Alkmeon Naviera S.A.*, 633 F.2d at

15  797.

16        20.    There are exceptional circumstances under which prejudgment

17  interest is unwarranted, including (1) unwarranted delay of litigation; (2) no actual

18  loss; (3) no proof of deprivation of use; (4) parties stipulated to exclude

19  prejudgment interest; and (5) bad faith.  *Alkmeon Naviera, S.A.*, 633 F.2d at 797-

20  98.  None of these exceptional circumstances apply to this case.

21        21.    In admiralty as well as non-admiralty cases, courts in the Ninth

22  Circuit have applied the post-judgment interest statute of 28 U.S.C. §1961 in

23  setting the prejudgment interest rate.  *See Western Pacific Fisheries*, 730 F.2d at

24  1289; *Columbia Brick Works, Inc. v. Royal Ins. Co. of America*, 768 F.2d 1066,

25  1071 (9th Cir. 1985); *GF Co. v. Pan Ocean Shipping Co., Ltd.*, 795 F.Supp. 1001,

26  at 1008-9 (C.D. Cal. 1992); *R.C. Fisher v. Cartwright*, 2011 WL 6025659, at *3

27

28  STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
     LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY
     JUDGMENT

(N.D. Cal. 2011).  NYK has calculated the prejudgment interest pursuant to 28 U.S.C. §1961, for the calendar week preceding the due date for each charge, up to February 28, 2015.  NYK is entitled to recover  prejudgment interest in the amount of $268.48 from Pandol.

22.     Under Article 29 of the Bills of Lading, NYK is also entitled to recover attorneys' fees and expenses incurred as a result of the breach of the Bills of Lading and in collecting the unpaid freight charges.  *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-59 (1975) (An award of attorneys' fees is available when a contract provides for a fee award.); *See also Sea-Land Service, Inc. v. Murrey & Son's Co., Inc.,* 824 F.2d 740, 744-45 (9th Cir. 1987) (Court awarded attorneys' fees to carrier incurred in collecting freight charges where bill of lading expressly provided for such recovery);  *Great White Fleet (US) Ltd. v. DSCV Transport, Ltd.,* 2001 U.S.Dist. LEXIS 13254, *21, *22 (E.D. La. 2001) (A bill of lading provision providing for the recovery of attorneys' fees has been held to be valid, enforceable and not contrary to public policy).

23.     As supported by the Declaration of Alan Nakazawa, NYK is awarded attorneys' fees in the amount of $7,775 and collection costs in the amount of $500.90.

Dated: April 14, 2015          COGSWELL NAKAZAWA & CHANG, LLP


By:     /s/ Alan Nakazawa
Alan Nakazawa
Attorneys for Plaintiff
NIPPON YUSEN KAISHA

IT IS SO ORDERED.


DATED: MAY 14, 2015          HONORABLE MANUEL L. REAL

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW FOR NIPPON YUSEN KAISHA'S MOTION FOR SUMMARY JUDGMENT